IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


BARRY D. LONDON                                                                                              PLAINTIFF


                v.                  Civil No. 6:14-cv-06017-RTD-BAB


WENDY KELLEY; DR. L. MURPHY;
DR. J. JONES; and DR. M. KIRK, JR.                                                                  DEFENDANTS


### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff, Barry D. London, pursuant to 42 U.S.C. § 1983. Plaintiff is currently not incarcerated. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Currently before me is a Summary Judgment Motion from Defendant Kelley, (ECF No. 41), and from Defendants Murphy, Jones, and Kirk. (ECF No. 49.) Plaintiff Responded. ECF No. 34. After careful consideration, the undersigned makes the following Report and Recommendation.

**I.    BACKGROUND**

During the time at issue in his Complaint, Plaintiff was incarcerated in the Arkansas Department of Corrections ("ADC") Ouachita River Unit. Plaintiff filed his Complaint on February 7, 2014, suing all Defendants in both their official and individual capacities. ECF No. 1. Plaintiff filed a Supplement to his Complaint on April 14, 2014. ECF. No. 23. Defendant

1

Kelley filed her Summary Judgment Motion on November 25, 2014. ECF No. 41. Defendants Murphy, Jones, and Kirk filed their Summary Judgment Motion on January 9, 2015. ECF No. 49. Plaintiff was ordered to file a Response to Defendant Kelley's Summary Judgment Motion by December 23, 2014. ECF No. 45. He was Ordered to file a Response to the Physician Defendants by February 2, 2015. Plaintiff filed a Response to both Summary Judgment Motions on February 11, 2015. ECF No. 55.

Plaintiff seeks monetary damages. ECF No. 1.

## II.     LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for

summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**III.   DISCUSSION**

Plaintiff alleges he was denied full and proper medical examinations, was denied proper pain medication, was denied a one-arm work script, and was denied a script for a lower bunk assignment. He states three dates where these allegations occurred.

On February 27, 2013, he was seen by Defendant Jones, P.A. He states Dr. Jones refused pain medications for a chronic left shoulder problem,[1] and did not give a one-arm work "strip," but only prescribed a wrist and ankle brace for him. He noted that Dr. Jones ordered an x-ray of his left shoulder. ECF No. 1, p. 10.

On March 13, 2013, he was seen by Defendant Murphy, D.O. He states he saw Dr. Murphy for a swollen right knee and swollen right ankle, a painful left shoulder, and a chronic right hand injury. He states she refused to order a lower bed assignment, pain medication, or an appropriate duty "strip." He states she told him "there's nothing wrong" and told him he needed to exercise. ECF No. 1, p 11.

On April 4, 2013 he was seen by Defendant Kirk, M.D. He states he saw Murphy for swollen or fluid-filled knees and right ankle, left shoulder pain, and a right hand injury. He also complained of being very cold. He states Kirk told him there was nothing wrong, and he would not be getting chronic pain medication. Plaintiff also states that Kirk did not order a winter arthritis wear skull cap for him. ECF No. 1, p. 12.

With his Response, Plaintiff submitted a Social Security letter indicating he is eligible for

---

[1] Plaintiff states that the left shoulder and right hand injuries were the result of "catching" a night stick blow from a corrections officer. ECF No. 1, p. 10. Medical records note this occurred in 1992. ECF No. 51, Ex. A., p. 11.

3

SSI payments beginning January 2015. ECF No. 55, p. 13. The letter does not indicate what condition or combination of conditions make Plaintiff eligible for benefits.

Defendant Kelley argues that Summary Judgment is proper as to the claims against her for five reasons: 1) Plaintiff failed to exhaust his administrative remedies as to her; 2) Plaintiff's claims against her fails as a matter of law; 3) Plaintiff is suing her based solely on her supervisory capacity; 4) any individual claims are barred by qualified immunity; and 5) any official capacity claim is barred by sovereign immunity. ECF No. 43, pp. 2-3.

Defendants Murphy, Jones, and Kirk argue that Summary Judgment is proper as to the claims against them because the facts show only that he disagreed with the diagnosis and treatment afforded to him. ECF No. 50, p. 9-10.

Plaintiff is suing the Defendants in both their official and individual capacities. Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998). "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's

4

constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 permit inhumane ones. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994).

### A.     Official Capacity

Plaintiff has not identified any custom or policy of Ouachita County or the State of Arkansas which violated his constitutional rights. Therefore, he has not stated any cognizable official capacity claims.

### B.     Individual Capacity

#### 1.     Defendants Kelley, Jones, and Kirk: Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), mandates exhaustion of available administrative remedies before and inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U. S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

In this case, the only medical grievance submitted by Plaintiff was OR-13-00309. This

grievance addresses the March 13, 2013 visit with Dr. Murphy. Only the copy of the appeal for this greivance was submitted to the Court. Plaintiff grieved that his knees were swollen and he was not given a script for "no stairs" and a lower bunk. He also grieved that he was not given a lay-in until he saw the doctor. Defendant Kelley found this grievance to be without merit. She stated he was seen in sick call on March 6, 12, and 13 for a variety of complaints, including swollen gums, pain in upper center back and left shoulder, toenail removal, eye problems, knee and right hand pain. She further stated that Dr. Murphy examined him and found "no evidence of physical impairment nor medical reason" for any of his script requests.

No grievances were alleged or submitted against Defendants Kelley, Jones or Kirk. Therefore, Plaintiff did not exhaust his administrative remedies against these Defendants.

Accordingly, these claims fail as a matter of law.

### 2.   Dr. Murphy: Denial of Medical Care and Accommodation

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Further, it is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

In this case, the facts, allegations, and evidence provided by Plaintiff show only his disagreement with the diagnosis and treatment prescribed by Dr. Murphy. Every medical record submitted by Defendants, which include an x-ray of his left shoulder, indicate that Plaintiff did not have medical conditions which required the accommodations and pain medication he was requesting.

7

Plaintiff's allegations concerning Dr. Murphy are based on his examination from her on March 13, 2013. Plaintiff's allegations concerning this visit are summarized above.

The medical record for the March 13, 2013 visit states that Plaintiff complained of severe left shoulder pain from being clubbed in 1992. He wanted scripts for a "lower tier/top rack," and double [unintelligable].  Her notes state that he was "loud, aggressive, argumentative, and demanding." The left shoulder showed normal range of motion and no tenderness. The right knee showed no swelling or tenderness, normal range of motion, and normal physical exam. "NOW Plaintiff mentions his hand is hurting and he wants "one arm duty" script for right hand problem." Her prescription notes state: Multiple pain complaints: left shoulder, right knee, and right hand. "[W]ithout evidence of physical impairments: I see no medical reason for a script based on this exam." ECF No. 51, Ex. A, pg. 11.

Defendant Murphy's affidavit repeats this summary of the appointment and prescription. It also adds that Plaintiff was prescribed naproxen and nortriptyline[2] for his subjective complaints of pain on December 2, 2012. However, she cancelled the nortriptyline after Plaintiff was convicted of hoarding and trafficking the nortriptyline to other inmates instead of taking it for his pain. She noted that he continued to receive his naproxen. ECF No. 51, Ex. C, p 1. Defendant Murphy also emphasizes Plaintiff continued to add complaints of pain sources throughout the examination, rather than presenting them at the beginning of the examination. ECF No. 51, Ex. C, 2. She states "Mr. London had absolutely no medical need for the scripts he was requesting." ECF No. 51, Ex. C, p.

---

[2] Nortriptyline is a tricyclic antidepressant. http://www.pdr.net/drug-summary/nortriptyline-hydrochloride-capsules?druglabelid=1981&id=2869.  It can also be used for the treatment of chronic neuropathic pain. http://www.hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/peripheral_nerve/patient_info/NORTRIPTYLINE_2007.pdf.

8

3. An examination of the medical records submitted by Defendant show Dr. Kirk stating Plaintiff is "most likely a malingerer with over exaggerat[ion] of his physical problems." ECF No. 51, Ex. A, p. 14.

Plaintiff's own actions blatantly contradict his allegations of severe chronic pain. Plaintiff's disciplinary record indicates he was found with seven nortriptyline pills and seven aspirin pills on January 17, 2013. Plaintiff admitted to the corrections officer that he "was going to sell the nortriptyline pills for commissary." ECF No. 51, EX. B, p. 1. Plaintiff acknowledges this disciplinary action in his Complaint, but states that this caused the medical staff to disregard him and his serious medical problems. ECF No. 1, p. 9. Thus, rather than taking all of his medication for pain, he was instead saving and selling it. These actions are not indicative of an individual suffering from severe chronic pain without the use of nortriptyline.

Plaintiff's free-world physician also did not provide a prescription for nortriptyline. However, he did prescribe antidepressants. With his Response, Plaintiff submitted copies of prescriptions from Saint Vincent's in Little Rock, and an assessment summary from the Moody Chapel Substance Abuse Education Program. The prescriptions were dated November 17, 2014. They are written for

sertraline (Zoloft),[3] trazodone,[4] lisinopril,[5] and hydrochlorothiazide.[6] ECF No. 55, p. 8-9. Antidepressants can be used off-label to treat chronic pain. http://www.mayoclinic.org/pain-medications/ART-20045647. The prescriptions themselves do not indicate whether the antidepressants were prescribed for depression or for chronic pain. Plaintiff did not submit any medical examination records from St. Vincent's. The summary from the Moody Chapel program indicates that the drugs were received as a result of a mental health evaluation, but this summary was not by the prescribing physician.

At most, Plaintiff has provided evidence his free-world doctor at St. Vincent's prescribed antidepressant medication when his antidepressants in prison were discontinued. Mere disagreement with a prison doctor's professional independent judgment is not an actionable constitutional violation. *See Nelson*, 603 F.3d at 449 ("a prisoner's mere difference of opinion over matters of expert medical judgment or a course of treatment fails to rise to the level of constitutional violation."(internal quotations omitted); *Dulany*, 132 F.3d 1 at 1240. (a prison doctor is not required to follow the recommendations of outside consultants, but instead "remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of

---

[3]Sertaline is a selective serotonin reuptake inhibitor indicated for treatment of major depressive disorder, social anxiety disorder, panic disorder, premenstrual dysphoric disorder, and PTSD. http://www.pdr.net/drug-summary/sertraline-hydrochloride?druglabelid=2051&id=2847.

[4]Trazodone is a triazolopyridine derivative indicate for treatment of Major Depressive Disorder. http://www.pdr.net/drug-summary/trazodone-hydrochloride?druglabelid=3033&id=1692.

[5]Lisinopril is an ACE inhibitor indicated for treatment of hypertension. http://www.pdr.net/drug-summary/prinivil?druglabelid=376&id=1090.

[6]Hydrochlorothiazide is a thiazide diuretic. http://www.pdr.net/drug-summary/hydrochlorothiazide-tablets?druglabelid=1973&id=1942.

treatment"). Further, Plaintiff's disagreement with Dr. Murphy's discontinuation of nortriptyline appears to based on economic concerns rather than medical needs, given he himself had voluntarily discontinued taking his antidepressant in order to sell it for commissary items.

Accordingly, there are no genuine issues of material fact regarding Plaintiff's denial of medical care and accomodation claims, and these claims fail as a matter of law.

## IV.   CONCLUSION

For the foregoing reasons, I recommend Defendants' Motions for Summary Judgment (ECF.No. 41, 49.) be **GRANTED** and that all Defendants be dismissed from this action without prejudice.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**Dated this 20th day of July 2015.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE